UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CR-06-359-01 (RMC) |
| COURTNEY WEST | : | |

**DEFENDANT'S OBJECTIONS TO PRESENTENCE
INVESTIGATION REPORT AND MEMORANDUM IN AID OF SENTENCING**

On May 18, 2007, Mr. Courtney West pled guilty to one count of unlawful distribution of phencyclidine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). He will appear before this Honorable Court for sentencing on October 15, 2007. Mr. West, through undersigned counsel, respectfully submits the following objections to the Presentence Investigation Report (hereinafter "PSI") and additional information for the Court's consideration in determining an appropriate sentence.[1]

**Factual Background**

Mr. West was born in suburban Maryland, where he lived with his mother and father until he was seven years old. He was then sent to live with his maternal aunt, Minnie A. Stiff, in Hampton, Virginia. His mother made the decision to send him to live with his aunt just after his older brother was convicted in relation to a shooting. At that time, his parents had separated. His mother was experiencing financial difficulties and his father had been in and out of the criminal justice system. His mother decided that it would be better for him to live with his aunt,

---

[1] Counsel did not receive the final PSI until October 4, 2007, and, due to commitments in other matters, was unable to complete this memorandum until October 11, 2007. Mr. West has no objection to continuing the sentencing hearing, if the Court or government need additional time due to the filing of defendant's memorandum only four days prior to the sentencing date.

away from the District of Columbia.  As Ms. Stiff describes it, Mr. West had "experienced much hunger, deprivation and heaven knows what prior to coming to live [in Hampton]."  As difficult as it was living with his mother, his mother's decision to send him away is something that has deeply affected Mr. West.

In Hampton, where his aunt and uncle were both medical doctors, Mr. West was given a stable living environment, but he never felt like part of his aunt's family.  He longed to be with his own mother and family.  While he never felt like he was part of his aunt's family, his own immediate family began treating him as if they thought he thought he was better than them because he was living a relatively more privileged life.  Nevertheless, Mr. West remained emotionally loyal to his own siblings and mother's family.

When he was in middle school, conflicts developed between Mr. West and his aunt and uncle.  He began drinking alcohol at the age of twelve.  Eventually, when he was fourteen years old, Mr. West decided -- and was permitted -- to move back to the District of Columbia area to live with his mother.  He now recognizes the opportunity he lost when he moved out of the stable home his aunt had provided.  He believes that this was one of the biggest mistakes of his life.

Since moving back to the District of Columbia, life has not been easy for Mr. West.  Soon after he moved back, when he was just fifteen, his mother moved out of their apartment to live with a boyfriend.  Both of his older brothers were incarcerated, and he was left to live by himself.  His mother visited frequently and ensured that he had food, but he had little supervision.  Mr. West struggled to complete his education, but with little guidance he dropped out of school during the 9th grade.  He developed a substance abuse problem, smoking marijuana daily.

Mr. West also has struggled to support himself. Without formal training, he taught himself auto repair and equipment installation. He has used a garage owned by his uncle to do freelance work.

In 2003, when he was twenty-three years old, he got a job as a trainee with an electrical union, the N.E.C.A./I.B.E.W. Local Union #26. After he was admitted into this training program, he stopped smoking marijuana because he realized it impaired his ability to work. Since that time, Mr. West has done electrical work for his uncle, who renovates houses, and has worked through the union. As verified in the PSI, in 2005, he earned $45,202.49 for electrical work, demonstrating his ability to support himself.

In 2006, the work opportunities through the company where Mr. West was working slowed down. Mr. West was laid-off, but was told he could return when business increased. He then began experiencing financial difficulties.

In January 2007, he was arrested for the instant offense. He was released to Pretrial Services on January 12, 2007, and entered a guilty plea on May 18, 2007.

Since his release, Mr. West has been struggling to regain employment. He has discussed with counsel and sought numerous opportunities. Finally, in September, his application for reinstatement into the union's training program was granted, and he is beginning to work as an electrician again. Mr. West also has begun an on-line training program to become a licensed electrician.

After speaking with Mr. West on numerous occasions over the course of the last several months, undersigned counsel believed that Mr. West showed signs of depression. Counsel arranged for a psychologist, Dr. Carol Giunta, to speak to Mr. West. Dr. Giunta confirmed that

Mr. West suffers from depression and anxiety. Dr. Giunta recommends that counseling be included as part of any sentence. Mr. West also now recognizes that he needs counseling. Dr. Giunta noted that Mr. West was struggling with the emotional pain that resulted from the choices his mother made – Mr. West has not yet managed to cope with his feelings of abandonment. Dr. Giunta also noted that Mr. West appeared to recognize and struggle with these feelings, demonstrating a willingness to progress. In Dr. Giunta's opinion, Mr. West is someone that wants to start over, but will need counseling to help him move forward and formulate a life plan.

## Argument

**I.   THE PSI INCORRECTLY CALCULATES MR. WEST'S OFFENSE LEVEL.**

Pursuant to a plea agreement, Mr. West pled guilty to the lesser included offense of unlawful distribution of phencyclidine (PCP) on September 21, 2006, charged in count three of the indictment. The plea agreement, written by the government, provides that "[Mr. West] understands and agrees that for purposes of sentencing under the United States Sentencing Guidelines, the relevant conduct for this offense is a gross weight of 93.2 grams of Phencyclidine, in which there was 8.4 grams of the actual drug, which quantity represents the total amount involved in [Mr. West's] relevant criminal conduct, including amounts [Mr. West] distributed." See Plea Agreement at 2. The government and Mr. West also agreed that the Factual Proffer – written by the government, accepted and signed by Mr. West, and filed with the Court prior to the plea – "fairly and accurately describes [Mr. West's] actions and involvement in the offense to which [Mr. West] is pleading guilty." See Plea Agreement 2. The Factual Proffer

describes one sale on September 21, 2006, of a mixture that contained PCP and weighed 93.2 grams, with a total of 8.4 grams of the actual drug of PCP.

Despite the factual agreement of the parties, the Probation Office bases its Guidelines calculations on more than the amount of PCP for which the parties agree Mr. West is responsible. The Probation Office includes amounts allegedly related to the unproven charges in the indictment. Specifically, the Probation Office claims, without support, that Mr. West is also accountable for "3.1 grams of PCP obtained on August 24, 2006, 6.3 grams of PCP obtained on September 12, 206, and 8.2 grams obtained on October 20, 2006, as charged in the Indictment in this case." PSI at 4.

In rejecting Mr .West's objection to the offense level calculation in the PSI, the Probation Office noted that the Court and the Probation Office are not bound by the plea agreement. Nonetheless, the parties knowledge of and agreement regarding Mr. West's relevant conduct deserves some deference – the government investigated Mr. West's conduct and agreed that Mr. West should be held accountable for 8.4 grams of PCP.

More significantly, the Court cannot adopt the Probation Office's calculations unless they are supported by evidence. To be included in the Guidelines calculation, "relevant conduct" at a minimum must be proven by a preponderance of the evidence. See United States v. Gottfried, 58 F.3d 648, 652 (D.C. Cir. 1995). The government bears this burden of proof. Id. However, the government has chosen not to argue the position that the Probation Office has decided to take, and there is no basis upon which the Court can make the finding the Probation Office suggests. The PSI refers to no evidence to demonstrate Mr. West's connection to additional amounts of PCP. The report refers to the indictment, but the indictment, of course, is not evidence and is not

5

sufficient proof of anything. See Criminal Jury Instructions for the District of Columbia 2.06 (indictment not evidence); United State v. Burney, 81 F.3d 1147 (D.C. Cir. 1996) (Unpublished Opinion) ("district court could not properly have relied solely upon the indictment in enhancing appellant's sentence"). The Probation Office's response to the defense objection to the PSI offense level calculation refers to "investigative reports," but these reports are unsworn and insufficient proof. Two of the reports do not name Mr. West, and the third alleges that a man who sold PCP was identified as Mr. West, but does not explain how that identification was made.

The Court should reject the Probation Office's unsupported findings and calculate the offense level based on the conduct that Mr. West and the government agreed was relevant – 93.2 grams of Phencyclidine, in which there was 8.4 grams of the actual drug. The appropriate offense level is level 21 (level 24, minus 3 levels for acceptance of responsibility).

**II.    THE PSI INCORRECTLY CALCULATES MR. WEST'S CRIMINAL HISTORY.**
.
The District of Columbia Circuit has held that although sentencing courts are no longer required to follow the Guidelines and must only consider them as one of several sentencing factors, when determining the appropriate sentencing range under the Guidelines, courts must follow the strictures of the Guidelines. United States v. Price, 409 F.3d 436 (D.C. Cir. 2005). The government still bears the burden of proving facts that may be relevant in sentencing. Id. at 444. "[W]hen the defendant calls into dispute a presentence report's description of an alleged prior conviction, the Government must demonstrate that the description in the report is based on a sufficiently reliable source to establish the accuracy of that description." Id. (citing United States v. Richardson, 161 F.3d 728, 737-38 (D.C. Cir. 1998)). The Price court noted that "a

docket listing . . . would lack the necessary indicia of reliability for the Government to meet its burden . . . ." Id. at 445. Here, the information in the PSI is incorrect and the criminal history calculations are not supported by sufficiently reliable evidence.

When Mr. West was first arrested in this matter, the Pretrial Services Agency did a records check for Mr. West and found no criminal convictions. The PSI now lists a number of charges that were allegedly filed against "Courtney West" in Maryland. The PSI assesses one criminal history point for each of four of these alleged offenses: a 2001 possession of marijuana; a 2001 possession of cocaine; a 2002 possession of marijuana; and a 2004 driving while impaired by alcohol. Undersigned counsel reviewed the documents contained in the Probation Office's files regarding these alleged offenses. For each offense, the only document (not a computer printout) within those files that refers to a possible conviction is a document entitled, "Docket Entries." As noted above, the D.C. Circuit has specifically held that such docket listings are insufficiently reliable proof of a conviction. Thus, without more, points cannot be assessed for these offenses when calculating Mr. West's criminal history. Without these points, Mr. West is in criminal history category I, not III.

In addition, at least one of the offenses that was listed, but not assessed criminal history points should be removed from the report entirely. Paragraph 23 of the PSI lists a juvenile adjudication for a third degree sex offense. Mr. West has never been arrested for or adjudicated delinquent for such an offense. Although the offense does not affect Mr. West's criminal history category, Mr. West respectfully requests that this inaccurate and prejudicial information be removed from the report. Counsel also reviewed the documents in the Probation Office's files regarding this allegation; these documents contain no identifying information such as a date of

birth or social security number and are insufficiently reliable evidence to support this information.

Finally, the status of the pending cases listed in paragraphs 37, 38, and 39 should be updated. The traffic offense listed in paragraph 37, is still pending and Mr. West is awaiting a new court date. The traffic offense listed in paragraph 38 was dismissed. And the bench warrant issued with regard to the disorderly house violation in paragraph 39 was quashed, after Mr. West was notified of the warrant and turned himself into the Prince George's County authorities. After quashing the warrant, the Prince George's County Commissioner told Mr. West that a new date would be scheduled, and he would be notified by mail.

### III.    A SENTENCE BELOW THE APPLICABLE GUIDELINE RANGE IS APPROPRIATE.

Although the Court must consider the Guidelines when determining an appropriate sentence, the Court must do so along with the other factors set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220 (2005). These factors include: "The nature and circumstances of the offense and the history and characteristics of the defendant; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense." 18 U.S.C. 3553(a). Pursuant to 18 U.S.C. § 3661,

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

As the D.C. Circuit recently stated, "[a] sentencing judge cannot simply presume that a Guidelines sentence is the correct sentence." United States v. Pickett, 475 F.3d 1347, 1353 (D.C.

8

Cir. 2007). Instead, the Court must "evaluate how well the applicable Guideline effectuates the purposes of sentencing enumerated in § 3553(a)." Id. As long as the sentence imposed is reasonable and supported by the factors outlined in § 3553, the Court may disagree with the range proposed by the Guidelines and exercise discretion to impose a sentence outside the range.

After considering all of the factors set forth in § 3553(a), the Court must impose a sentence "that reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment, afford[s] adequate deterrence, protect[s] the public, and effectively provide[s] the defendant with needed educational or vocational training and medical care." Id. at 765 (citing 18 U.S.C. § 3553(a)(2)). Section 3582 of Title 18 provides:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]." 18 U.S.C. § 3553(a) (emphasis added). Here, a sentence within the Guideline range would be greater than necessary to comply with the purposes of sentencing.

When considering the Guideline range, the Court should consider the government's representations at the time of Mr. West's plea. At that time, government counsel completed the Checklist for Pleas required by the Court. In doing so, government counsel calculated the appropriate offense level as a level 12 (base offense level 14, minus 2 for acceptance of

responsibility) and the appropriate sentencing range as 10 to 16 months, based on a criminal history category I.  Apparently, this calculation was based on an incorrect application of the PCP Guidelines, using the weight of the actual PCP as the weight of the total substance.  Although this calculation was mistaken, that the government calculated the Guideline range at 10 to 16 months and proceeded with the plea agreement demonstrates that the government believed such a sentence to be reasonable -- having investigated the case, the government agreed that a sentencing within this range would be reasonable.  See Plea Agreement at 7.  Because these calculations were mistaken, the government will no doubt now ask for a sentence within the correct sentencing range.  When considering this request, the Court should consider that Mr. West is the same defendant that he was -- and the government has the same information regarding his conduct that they had – when Mr. West pled guilty and the government thought a 10 to 16 month sentence would be reasonable.

     Under § 3553, in addition to the Guidelines, the Court must consider Mr. West's history and characteristics.  Mr. West has struggled to overcome very challenging family circumstances.  Although he did not finish high school, he worked hard to learn a trade and obtain employment.  Through these efforts, he now has auto repair skills and skills as an electrician.  This offense did not occur until after he found himself unemployed and unable to support himself.

     The Court should consider Mr. West's efforts since this offense occurred.  Since his arrest and release more than ten months ago, Mr. West has been trying to put his life in order.  Prior to entering his guilty plea, Mr. West did test positive once in April for PCP; however, that test was not the result of his drug use, but drug use by his niece, inside his apartment.  Although his niece has a substance abuse problem, Mr. West had permitted her to live with him, because she had

nowhere else to go.  After he tested positive, he realized that because he could not control her drug use in his home, he had to ask her move out.  She did, and he has consistently tested negative since April, 2007.

As noted in the PSI, Mr. West was arrested on June 14, 2007, for "disorderly house," after a neighbor complained that he and four friends were playing video games too loudly.   That arrest, however reflects nothing more than poor judgment with regard to the way he responded to the neighbor's complaint and the police.  Mr. West did not seek to commit a crime and recognizes that he should not have let that situation get out of control.

Mr. West's focus since he was released in this case has been regaining his employment. In September, he was reinstated into the Residential Trainee program with the Joint Apprenticeship & Training Committee, N.E.C.A./I.B.E.W., Local Union #26, in Lanham, Maryland.  And, as noted above, he has begun an on-line program to become a licensed electrician.

Mr. West is someone who has the ability and the desire to be a productive, law-abiding citizen.  He is currently on track to be back where he was in 2005 – working full-time as an electrician, earning a good living.  Incarcerating Mr. West at this point would hinder his ability to do so and set back his rehabilitation efforts.  As Dr. Giunta has noted, Mr. West has the ability to do well, but because of his depression and anxiety he will need the assistance of counseling. Given his background, the purposes of sentencing would best be served by imposing a sentence that does not include incarceration, but will permit him to continue his employment efforts and obtain the counseling he needs.

**Conclusion**

For all of the foregoing reasons and such other reasons as may be discussed at the sentencing hearing in this matter, Mr. West respectfully requests that the Court impose a sentence of no more than time served, followed by a period of supervised release.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500 ext. 109